## BALTIMORE & BOSTON BARGE CO. v. KNICKERBOCKER STEAM TOWAGE CO.

(Circuit Court of Appeals, First Circuit. May 25, 1909.)

No. 802.

TOWAGE (§ 15*)—INJURY TO TOW—LIABILITY OF TUG—EVIDENCE.

Where two tugs charged with being in fault for the grounding of a heavily laden barge which they were towing down the narrow channel of the Kennebec river established by a preponderance of the evidence that the barge took a sudden sheer to starboard which made it necessary for them to maneuver as they did to break such sheer, the fact alone that the barge then swung too far to port and grounded raised no presumption of negligence on the part of the tugs, and to charge them with liability the burden rested on the barge to show that their maneuver was unskillful.

[Ed. Note.—For other cases, see Towage, Cent. Dig. § 34; Dec. Dig. § 15.*]

Appeal from the District Court of the United States for the District of Maine.

For opinion below, see 159 Fed. 755.

Edward C. Plummer, for appellant.

Benjamin Thompson (Edward S. Dodge, on the brief), for appellee.

Before COLT and PUTNAM, Circuit Judges, and BROWN, District Judge.

BROWN, District Judge. This appeal relates to the grounding of the barge Emilie on rocks outside the ship channel, near Goodwin's Point, off the southerly end of Nehumkeag Island, in the Kennebec river, on August 21, 1906. The Emilie was a very long and heavy vessel, 216 feet long and 1,069 gross tons, and loaded with ice. She was in tow of the tug Seguin, which was ahead on a hawser about 20 fathoms in length, and of the tug Charlie Lawrence, made fast to her port quarter.

The testimony of the masters of the barge and the tugs is set forth with much detail in the opinion of the District Court, 159 Fed. 755, 763, et seq.

Upon a careful examination of the record we find nothing of importance in the testimony which was not considered by the District Court. Upon the evidence the District Judge found that the injury was caused by the fact that the barge, when off Nehumkeag Island, took a sudden sheer of about three points to starboard; that in order to break this sheer the Seguin was compelled to go to port and the Lawrence to reverse; that the sheer to starboard being broken the barge sheered to port, and before this sheer could be corrected the barge dragged across the rocks, which inflicted some injury, though the forward movement of the barge was not checked.

We are of the opinion that the District Court was justified in find-

ing that according to the preponderance of the testimony the barge, when in the vicinity of Nehumkeag Island, took a sudden and unusual sheer to starboard. The testimony upon this point was in direct conflict; the master of the barge denying that there was any sheer to starboard, the masters of the tugs both testifying to a very pronounced sheer to starboard, and also to the different movements of the Seguin and the Charlie Lawrence in the attempt to break that sheer. The movements testified to by Capt. Blanchard of the Charlie Lawrence are not denied by the master of the barge, and are such as are entirely consistent with the finding that there was a strong sheer of the barge to starboard, which the tugs were obliged to maneuver to correct.

The finding of the court that the prime cause of the grounding was a sheer to starboard is supported by the testimony of two witnesses, who testified orally before the District Judge not only directly to the fact but also to various maneuvers of both tugs which can be accounted for only on the theory of a starboard sheer. Substantially the same account of the maneuvers of the tugs was set up in the answer filed October 8, 1907.

The testimony of Capt. Nordal of the barge Emilie was taken by deposition on March 29, 1907. He was not recalled, nor was any other witness called on behalf of the barge to rebut the very specific statements of the masters of the tugs.

We must confess to considerable doubt as to whether the movements of the barge to the east shore were not due entirely to the movements of the tug Seguin to the port side of the channel, and to the stopping and reversing of the Charlie Lawrence, rather than to any unexpected sheer of the barge to port after her starboard sheer had been corrected. For the purposes of this appeal we must, in our opinion, consider as proven the fact that the barge took a sudden and decided sheer to starboard, and that it was necessary for the tugs to maneuver to check this sheer. Our doubt, then, must be confined to the question of the skill and judgment with which these movements of the tugs were made. The defense set up in the answer seems to be supported by the preponderance of proof. Having regard to the intrinsic probabilities, it might be said that it is quite as probable that the barge was swung too far to the easterly side of the channel by the action of the tugs in breaking the sheer to starboard as that after the sheer was broken the barge took another independent sheer to port. But upon an issue of this character, where the tugs have accounted for the grounding by the showing of a special emergency, and have definitely described movements not improbable and not necessarily inconsistent with good seamanship, all presumption of negligence from the mere fact of grounding then disappears, and the burden is cast upon the libelant to establish negligence by a clear preponderance of proof.

Upon the record as it stands, we are of the opinion that the burden was upon the libelant to show that in checking the starboard sheer of the barge the tugs were handled unskillfully, and that with better handling the barge could have been kept within the limits of the channel.

It should be remarked that the ship channel at this place is narrow. The barge was 216 feet in length, 35 feet beam, and drew 15 feet 6 inches. The channel navigable for the barge was from 100 to 150 feet wide, and, though of sufficient width for towing a barge of that size safely, there was hardly sufficient room to permit of maneuvers in case of an unexpected and sudden sheer of the barge at that point.

We find ourselves unable to say that there was any inexcusable fault in the handling of the barge by the tugs after the emergency of a sudden sheer in a narrow channel, and upon the whole we agree with the conclusion of the District Judge that the libelant did not sustain its contention that the respondent was at fault.

The decree of the District Court is affirmed, and the appellee recovers costs in this court.